Steven PAEPKE, Plaintiff-Respondent,

v.

Gregory LECK, and Steven Grady, Defendants-Appellants.†

Court of Appeals

*No. 92-0754. Oral argument October 15, 1992.—Decided December 10, 1992.*

(Also reported in — N.W. 2d —.)

†Petition to review granted.

230

For the defendants-appellants the cause was submitted on the brief of *Robert J. Kaiser, Jr.* assistant district attorney, Dane County. Orally argued by *Robert J. Kaiser, Jr.*

For the plaintiff-respondent the cause was submitted on the brief of *Stephen M. Needham* of *Lichtsinn & Haensel, S.C.* of Milwaukee. Orally argued by *Fred A. Erchul.*

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

GARTZKE, P.J. If the video poker machines taken from the plaintiff Paepke are not "gambling machines" as defined in sec. 945.01(3)(a), Stats., the police must return them to plaintiff.[1] We conclude that the machines are not gambling machines. We therefore affirm the order requiring their return to plaintiff.

---

[1] Section 968.20(1), Stats., provides in part:

Any person claiming the right to possession of property seized pursuant to a search warrant or seized without a search warrant may apply for its return to the circuit court for the county in which the property was seized or where the search warrant was returned . . .. If the right to possession is proved to the court's satisfaction, it shall order the property, other than contraband . . .., returned . . ..

"Contraband" includes gambling machines. Section 968.13(1)(a), Stats.

The facts are undisputed. On September 28, 1991, the appellants, Officers Leck and Grady, executed a search warrant at plaintiff's bar in Stoughton. The officers seized two video poker machines plaintiff owns. Charges were not filed against plaintiff. He petitioned the circuit court under sec. 968.20(1), Stats., for return of his machines.

Section 945.01(3), Stats., provides in part:

(a) A gambling machine is a contrivance which for a consideration affords the player an opportunity to obtain something of value, the award of which is determined by chance, even though accompanied by some skill and whether or not the prize is automatically paid by the machine.

(b) "Gambling machine" does not include any of the following:

. . ..

2. Any amusement device if it rewards the player exclusively with one or more nonredeemable free replays for achieving certain scores and does not change the ratio or record the number of the free replays so awarded.

A person inserts a coin to play the machines. The machines themselves provide no reward to a winning player, but Paepke told the officers that he had paid money to bar customers who won on the machine.

■ The application of a statute to a set of undisputed facts presents a question of law which we review independently of the trial court's decision. *First Nat'l Leasing Corp. v. City of Madison*, 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977).

Appellants contend that the definition of a gambling machine in sec. 945.01(3)(a), Stats., includes con-

trivances in which neither the opportunity to obtain a reward nor the actual reward itself derives from the machine itself. That construction would mean the definition includes machines as to which a third party rewards a player for his or her score in a game.

We reject that construction of sec. 945.01(3)(a), Stats. It would make gambling machines out of pool tables, dart boards and many other articles. A machine need not automatically disburse a reward to come within the definition. The last sentence in the statute expressly so provides. But Paepke's video poker machines do not provide the player with the opportunity to obtain a reward other than free replays. Free replays do not bring the machines within the definition of "gambling machine." Section 945.01(3)(b)2., Stats. Whatever the reward Paepke's customers receive, it is not from an opportunity the machine provides. The opportunity is from the person who provides the reward, in this case Paepke.

A video poker machine with other characteristics may well provide a player with the opportunity to receive something of value and fit the gambling machine definition. However, Paepke's poker machines do not fall within the statutory definition of a gambling machine and are therefore not contraband within sec. 968.13(1)(a), Stats. For that reason, Paepke is entitled to their return under sec. 968.20(1), Stats.

*By the Court.*—Order affirmed.

DYKMAN, J. (*dissenting*). The legislative debate over whether to legalize tavern gambling on video poker games must now change. Today's decision has protected those machines from seizure. Following the majority's

233

decision, roulette wheels and blackjack tables will also be immune from seizure, though openly used for gambling. I do not join that decision.

The definition of a gambling machine found in sec. 945.01(3)(a), Stats., is broad, and requires only a contrivance which accepts a consideration and offers a chance at a prize. Even machines which take some skill are outlawed. There are some exceptions which permit bingo games, raffles, lotteries, races and crane games. Still, consideration, chance and prize are the three factors which define a gambling machine.

The majority concludes that a video poker game, played with the purpose and expectation of winning money, is not a gambling machine. It does so by finding that Paepke's video poker machines do not provide a player with the opportunity to obtain a reward. This is a curious finding because the very purpose behind the machine is to induce people to insert coins with the hope that their score will be high enough to entitle them to a cash prize from the bartender. Paepke does not differ with this description of how the machine is played. Indeed, in the trial court, his attorney said: "Furthermore, it does not appear from the reading of [sec.] 945.01(3)[, Stats.,] that a gambling machine, *and I would submit that this is a gambling machine and would qualify under that*, is illegal." (Emphasis added.) Thus, not even Paepke believes the majority's theory that his video poker game does not provide a player with the opportunity to obtain a reward.

Gambling machines are not the only items that the legislature has defined by the use to which they are put. Many persons possess crowbars. It is only when one possesses these items with the intent to use them to commit a burglary that they become burglarious tools.

234

Section 943.12, Stats. There is no way to know whether a crowbar is a burglarious tool by observing it.

The legislature has defined some motor vehicles in part by the use to which they are put. *State v. Okray Produce Co.,* 132 Wis. 2d 145, 150, 389 N.W.2d 825, 827 (Ct. App. 1986). Thus, a "potato box vehicle" did not need to be licensed, not because of what it looked like, but because of the use to which it was put. *Id.* at 149-51, 389 N.W.2d at 827-28.

There is no reason why the legislature could not define a gambling machine in part by the use to which it is put. Were Paepke's video poker machine installed in an arcade where patrons would attempt to obtain high scores for the fun of doing so, the machine would not be a gambling machine. But installed in a place where a bartender pays its users for high scores makes it a gambling machine.

The other reason given by the majority for its holding is its fear that pool tables and dart boards would become gambling machines. This fear is unfounded. The clause "the award of which is determined by chance, even though accompanied by some skill" means that "[c]hance rather than skill must therefore be the dominant factor controlling the award . . .." *State v. Dahlk,* 111 Wis. 2d 287, 296, 330 N.W.2d 611, 617 (Ct. App. 1983). One who believes pool is a game of chance should play a few games with Minnesota Fats. Darts is little different.

The mischief that will be caused by the majority opinion is considerable even though persons who participate in commercial gambling may still be prosecuted. Section 945.03, Stats. Roulette wheels, blackjack and craps tables, baccarat and keno games are all like video poker games in that human intervention is necessary to pay the prize or award. That is the factor that the major-

ity believes is dispositive in determining whether a device is a gambling machine. Despite the legislature's inclusion in sec. 945.01(3), Stats., of the phrase "whether or not the prize is automatically paid by the machine," the majority has concluded that unless a machine dispenses money to a winning player, it is not a gambling machine. What has happened is that now, the only machines that will fit the majority's definition of "gambling machine" will be slot machines, or "one-armed bandits." That may be what comes to mind when one hears the words "gambling machine," but it is certainly not what sec. 945.01(3) requires.

Were I writing for the majority, I would conclude that given the facts of this case, Paepke's video poker machine is a gambling machine. Were it necessary, I would add a footnote stating that despite that conclusion, Wisconsin's pool tables and dart boards were not at risk.